# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MCMAHON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff(s), | ) ) | No. 14 C 03346 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| BUMBLE BEE FOODS LLC, | ) ) ) | |
| Defendant(s). | ) | |

## **MEMORANDUM OPINION AND ORDER**

This putative class action seeks recovery from Bumble Bee Foods LLC under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, the Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1, and a variety of common law claims, including unjust enrichment.[1] The named plaintiff, Joseph McMahon, alleges that Bumble Bee engaged in deceptive conduct when it sold various seafood products with labels that indicated they were an "Excellent Source of Omega 3." Pls.' Cmplt. at ¶ 31. Bumble Bee moves to dismiss McMahon's IFDCA claim on preemption grounds and contends that McMahon's unjust enrichment claim is not a viable cause of action under Illinois law. In the alternative, Bumble Bee moves to have McMahon's case stayed until January 1, 1016, which is when the FDCA's recently adopted rule concerning Omega-3 nutrients becomes effective. For the reasons that follow, Bumble Bee's motion is denied.

---

[1]This Court has original jurisdiction over McMahon's claim under 28 U.S.C. § 1332(d) because he seeks to certify a class action in which: (1) the matter in controversy purportedly exceeds $5, 000, 000, exclusive of interest and costs; (2) a member of the class is a citizen of a state that is different from a defendant; and (3) the number of plaintiffs in the proposed class is greater than 100. *See* Cmplt. ¶ 21.

**Background**

McMahon alleges that Bumble Bee made a number of impermissible qualitative statements about the quantity of Omega-3 acids in its seafood products. The statements, located on the labeling of Bumble Bee's Chunk White Tuna in Water, its Chunk White Tuna in Oil, and its Albacore Tuna in Water, indicated that the products were an "Excellent Source [of] Omega-3" and displayed an American Heart Association seal. Pls.' Cmplt. at 1. McMahon contends these labels were deceptive and in violation of the IFDCA.

When labeling food products, if a food manufacturer wishes to make a qualitative statement about the nutritional value of a food product—such as that the product is an "excellent source of" or "high in" a particular nutrient—it must comply with both federal and state regulatory requirements. If it fails to do so, the product may be deemed "misbranded." 21 U.S.C. § 343 (a); *see* 410 ILCS 620/11. The FDCA permits food manufacturers to make a qualitative statement indicating that a food item is "high in" or an "excellent source of" a nutrient only if the product contains at least twenty percent or more of the recommended daily intake ("RDI") or the daily reference value ("DRV"), 21 C.F.R. § 101.54 (b), and food manufacturers can only claim the product is a "good source" of a particular nutrient if it contains ten to nineteen percent of the RDI or DRV of that nutrient. *Id.* § 101.54 (c). If the FDA has not established an RDI or DRV for a particular nutrient then food manufacturers cannot make qualitative statements about that nutrient, unless they submit a notification to the FDA and receive its approval. *See* 21 U.S.C. § 343 (r)(2)(G).

To receive FDA approval, the food manufacturer must submit to the FDA an "authoritative statement" that has been published by the National Academy of Sciences or a governmental public health body that identifies the appropriate nutrient level for the product.

2

21 U.S.C. § 343 (r)(2)(G)(ii). The manufacturer must also provide the FDA with a copy of the exact qualitative statement it wishes to make on the product. *Id.* If the FDA takes no action within 120 days then the manufacturer can put the submitted statement on the product's label, notwithstanding the lack of an established RDI or DRV for that nutrient. *Id.* At any time thereafter, however, the FDA can disallow the nutrient content claim by issuing a regulation prohibiting or modifying the claim, or by finding that the petitioner's notification lacks required information. U.S.C. § 343 (r)(2)(H). The IFDCA directly tracks the requirements of the FDCA, stating that the Illinois Food and Drug Commission should "make the regulations promulgated under [the IFDCA] conform, in so far as practicable, with those promulgated under the Federal Act." 410 ILCS 620/21 (a). Additionally, "a federal regulation adopted pursuant to [the IFDCA] takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21 (i).

With respect to Omega-3 nutrients, the FDA has not established an RDI or DRV metric. Hence, any food manufacturer that wishes to advertise its product with a qualitative statement about the presence of Omega-3s must submit to the FDA an application that follows the steps outlined in U.S.C § 343(r). In 2005, three separate food manufacturers did so and submitted nutrient content claim notifications to the FDA, claiming that the Food and Nutrition Board of the Institute of Medicine (IOM) of the National Academy of Sciences published a report that qualified as an authoritative statement concerning the RDI for Omega-3s. Def.'s Mot. to Dismiss at 5. Bumble Bee, however, was not one of these manufacturers.

Citing the IOM report, the three manufacturers claimed that if one serving of their seafood products contained at least 32 mg of Omega-3 fats, then they exceeded the FDCA threshold requirements for products to be labelled as being "high in" or an "excellent source of"

3

a particular nutrient. They thus proposed to label their seafood products as an "Excellent source of Omega-3 EPA and DHA." *Id.* The FDA took no action within 120 days and on April 9, 2006 it became permissible for the submitting manufacturers to use their proposed label. *Id.* Although Bumble Bee had not submitted a notification to the FDA, it also soon began making similar claims on its own seafood labels. Those claims are what McMahon alleges were deceptive.

Despite its earlier acquiescence to the manufacturers' notice, on November 27, 2007 the FDA published a proposed rule in response to the Omega-3 notifications. *See* Food Labeling: Nutrient Content Claims; Alpha-Linolenic Acid, Eicosapentaenoic Acid, and Docosahexaenoic Acid Omega-3 Fatty Acids, 72 Fed. Reg. 66103 (proposed Nov. 27, 2007). In its proposed rule, the FDA rejected the IOM report as an authoritative statement because IOM had determined the Omega-3s' reference values by using a method that was not recognized by the FDA. *Id.* at 66104. The FDA concluded that, going forward, food manufacturers could not make qualitative statements about the content of Omega-3s in their products. *Id.* Although the Omega-3 rule was finalized on April 28, 2014, the FDA decided to delay implementing the rule until January 1, 2016. This decision was based on comments submitted from affected manufacturers expressing concern about the costs associated with phasing out food labels that were permissible under the manufacturers' previous notification sent to the FDA. But the FDA did not indicate that civil actions enforcing current law were stayed pending the rule's implementation.

## Discussion

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Yeftich v. Navistart, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Exhibits that are attached to the complaint become part of the pleadings, *see* Fed.R.Civ.P. 10 (c), and can be considered on a motion to

dismiss.[2] *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). In moving to dismiss McMahon's IFDCA claim, Bumble Bee contends that McMahon's state law claim is preempted by the FDCA and, in the alternative, that this Court should stay his case until January 1, 2016. Def.'s Mot. to Dismiss at 7, 11. Bumble Bee also argues that McMahon's unjust enrichment claim does not state a viable cause of action under Illinois law. *Id.* at 11. These arguments are addressed in turn below.

### A. Preemption

Bumble Bee contends that the FDCA expressly preempts McMahon's state law claim because he "attempts to use state law to impose different and additional food labeling requirements than [the] FDA," which is prohibited by the FDCA's preemption provision. Def.'s Mot. to Dismiss at 10. Bumble Bee faces a strong presumption against preemption, *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013), and in seeking to invalidate McMahon's state law claim it must surmount "the starting presumption that Congress did not intend to supplant state law." *De Buono v. NYSA-ILA Med. and Clinical Services Fund*, 520 U.S. 806, 814 (1997). Federal law can, however, preempt state or local laws in three different ways: express preemption, field preemption, and conflict preemption. *Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). Express preemption, which Bumble Bee invokes here, occurs when a federal statute explicitly states that it overrides a state or local law that is

---

[2] In response to Bumble Bee's motion to dismiss, McMahon asks the court to take judicial notice of a Bumble Bee representative's deposition testimony given during another case. Pls.' Resp. at 6. Bumble Bee's request is denied. In deciding a motion to dismiss under Rule 12(b)(6), the Court may only consider the allegations in the complaint and the attached exhibits (such as the allegedly deceptive labels that Bumblebee includes with his complaint). *Bogie*, 705 F.3d at 609. Evidence from outside the four-corners of the complaint, such as deposition testimony, cannot be considered in deciding Bumble Bee's motion. *Id.*

inconsistent with the language of the preemption provision. *Id*. Bumble Bee relies on the preemption provision of the FDCA which states:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—(1)any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title.

21 U.S.C. § 343-1(a)(1). The Act also prohibits states from imposing "any requirement respecting any claim of the type described in section 343(r)(1) of the FDCA…made in the label or labeling of food that is not identical to the requirement of section 343(r)." 21 U.S.C. § 343-1(a)(1)(5). Thus, a state can impose requirements that are identical to those imposed by the FDCA, but if state law requirements differ from federal requirements—whether they are more or less onerous—then the state law is deemed preempted. *Turek v. General Mills Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). The FDCA's requirements can stem directly from the statute itself, or from rules promulgated via the FDA's rulemaking authority; these rules contain just as much preemptive effect as the organic statute from which they are derived. *Fidelity Fed. Savings and Loan Ass'n. v. de la Cuesta*, 458 U.S. 141, 153-54 (1982) ("Where Congress has delegated the authority to regulate a particular field to an administrative agency, the agency's regulations issued pursuant to that authority have no less preemptive effect than federal statutes.").

Thus, if the federal regulations for making qualitative nutritional statements on food products were substantively different from IFDCA requirements, then the state law would be preempted. But since the IFDCA expressly adopts the FDCA, and the accompanying rules promulgated by the FDA, Bumble Bee cannot—and does not—contend that McMahon's IFDCA claim is substantively different than an FDCA claim, because they are in fact one in the same.

*See* 410 ILCS 620/21. Instead, Bumble Bee alleges that McMahon's state law claim is inconsistent with federal law, and thus preempted, because he is bringing an enforcement claim under *current* law, instead of waiting until the new FDA rule regarding the labeling of Omega-3 products becomes effective on January 1, 2016.

Bumble Bee's claim does not withstand scrutiny. As a threshold matter, Bumble Bee misconstrues McMahon's complaint. Bumble Bee contends that the "FDA [] concluded that the Omega-3 Rule will not take effect until 2016, whereas McMahon claims damages based *on that legal theory* right now." Def.'s Mot. at 10. But nothing in McMahon's complaint indicates that he is seeking to enforce the Omega-3 rule that becomes effective on January 1, 2016. Rather, McMahon's complaint makes abundantly clear that he is seeking to enforce provisions of the FDCA that are in effect now and have been in effect since the time that McMahon filed his complaint, and which have been expressly adopted by the IFDCA. Pls.' Reply at 15-16. McMahon alleges that Bumble Bee's products were misbranded under existing law because Bumble Bee was not authorized to make statements about Omega-3's because it failed to submit an application to the FDA; that other manufacturers did so, McMahon asserts, did not give Bumble Bee license to include those claims as well. Resp. at 16.

As a substantive matter, Bumble Bee provides no authority in support of its proposition that the current law has somehow been eviscerated by the Omega-3 rule that takes effect on January 1, 2016. Although not cited by Bumble Bee in its motion, on occasion an agency's decision to refrain from regulatory or enforcement action may have a preemptive effect on current state law. *Gracia v. Volvo Europa Truck, N.V., 112 F.3d 291, 296* (7th Cir. 1997) ("[A] federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much pre-

emptive force as a decision to regulate.") (*citing Arkansas Elec. Co-op. Corp. v. Arkansas Pub. Serv. Commn.*, 461 U.S. 375, 383-84 (1983)). But if giving preemptive effect to an agency's decision to refrain from enforcement would create a regulatory gap, courts have declined to do so. *See Arkansas Elec. Co-op.*, 461 U.S. at 384.

But here, there is no basis to infer that in deferring the implementation of more stringent regulation, the FDA intended to invalidate the existing regulatory requirements governing Omega-3 statements—why would the FDA eliminate *all* regulation during a transition to a regime of greater regulation? Finding that the FDCA's current requirements for qualitative statements were put in hiatus pending the implementation of the Omega-3 rule would create a regulatory gap without any enforcement at all, giving manufacturers license to make qualitative statements about Omega-3s without repercussion until the new rule takes effect. Bumble Bee contends that such a gap would be permissible because "[t]o allow one state to start enforcing the Omega-3 prohibition now would undermine FDA's regulatory authority and the national uniformity that Congress intended to create with the FDCA." Def.'s Mot. at 10. But again, Bumble Bee is assuming that McMahon seeks to enforce the new Omega-3 rule, which is not the case. There is nothing about allowing enforcement of the current FDCA requirements that would undermine national conformity, as those requirements carry equal force throughout the country. Thus, rather than furthering the purposes of the FDCA, preempting McMahon's claim would leave a regulatory void where manufacturers could make qualitative nutritional statements without consequence.

Simply put, McMahon does not allege that Bumble Bee is in violation of the *future* Omega-3 rule. Rather, McMahon contends that Bumble Bee's products are and have been misbranded under *current law*; namely, the federal regulations that prohibit qualitative

statements about a product's nutritional value unless they exceed twenty percent of the RDI or DRV. Pls.' Resp. at 10. Under the law in effect today, a firm can display on its products a qualitative statement regarding Omega-3 only if it submitted a notification to the FDA identifying authority for its claim, describing the scientific literature supporting that authority, and by providing the exact qualitative language that will be included on the label. These same requirements have been expressly adopted by the IFDCA, and it is these requirements that McMahon alleges Bumble Bee violated. These provisions carry just as much force now as they did before the FDA adopted the Omega-3 rule and elected to refrain from implementing that rule until January 1, 2016. Thus, because the IFDCA requirements and the current FDCA requirements are one in the same, and neither was disturbed by the FDA's decision to delay implementation of the Omega-3 rule, McMahon's IFDCA claim does not fall within the purview of the FDCA's preemption provision.

In the alternative, Bumble Bee requests the Court to stay McMahon's case until January 1, 2016 when the pending Omega-3 rule becomes effective. Bumble Bee contends that if the Court were to fashion McMahon's requested injunctive relief now it would "unnecessarily complicate Bumble Bee's efforts to fully comply with the law" because it is currently in the process of changing its labels to comply with the FDA's Omega-3 rule. Def.'s Mot. at 14.

As a technical matter, Bumble Bee's argument is unpersuasive because it rests, again, on the faulty premise that the plaintiff is seeking to enforce the regulatory requirements of the new Omega-3 rule. Its statement that "the court cannot order Bumble Bee to remove all nutrient content claims concerning omega-3 [sic] before January 1, 2016 because that would be directly counter to the FDA's Omega-3 Rule," Mtn. at 13, is simply wrong. If, under the existing regulations, Bumble Bee is not authorized to include Omega-3 statements on its labels, then the

Court would have the power to enjoin Bumble Bee from selling more misbranded products.

As a practical matter, moreover, it is unnecessary to stay the case. At issue is Bumble Bee's motion to dismiss; in ruling on that motion, the Court only assumes the truth of the allegations in the complaint and cannot provide affirmative relief to the plaintiff even if the motion to dismiss is denied. And at this late juncture, it is a certainty that no injunction relating to Bumble Bee's compliance with current labeling requirements will be entered before the new Omega-3 Rule comes into effect on January 1, 2016.[3] Even without a stay, there is no risk that Bumble Bee will be forced to comply with an injunction requiring it to remove Omega-3 statements from its labels before January 1, 2016.[4] Accordingly, its motion to stay the case is denied.

### B. Unjust Enrichment

Bumble Bee contends that "[u]njust enrichment is not a cause of action under Illinois law"; rather, "it is a theory of recovery if a plaintiff proves other unlawful conduct." Def.'s Mot at 11. McMahon counters that unjust enrichment is a viable cause of action under Illinois law that can be asserted either independently or derivatively of another claim. Pls.' Resp. at 19. McMahon has the better of this argument as well. The Illinois Supreme Court has repeatedly described unjust enrichment claims as independent claims. For example, in *Raintree Homes, Inc. v. Village of Long Grove,* the Illinois Supreme Court observed that the "plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment." 807 N.E.2d 439, 445 (Ill. 2004). The court went on to note that the plaintiff's unjust enrichment claim could stand even in the absence of

---

[3] The plaintiff has not sought preliminary, much less, emergency, injunctive relief.

[4] That said, the fact that no injunction has been or will be issued before the new Omega-3 rule becomes effective does not insulate Bumble Bee from any claim for damages that the plaintiff has, or may, assert.

another underlying substantive claim. *Id.* In *HPI Health Care Services*, *Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672 (Ill. 1989), the Court set forth the elements of an unjust enrichment claim: to "state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *See also Indep. Voters v. Ill. Commerce Comm'n*, 117 Ill.2d 90, 510 N.E.2d 850, 852–58 (1987) (claim for restitution of excessive utility charges not tied to another cause of action).

Bumble Bee's argument to the contrary is founded not upon more recent authority from the Illinois Supreme Court, but rather on a single opinion from the Illinois appellate court that does not mention, much less discuss, the state Supreme Court's position on the question in *Raintree Holdings*. *See Martis v. Grinnell Mutual Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 3d Dist. 2009) (stating that an unjust enrichment claim cannot stand without a supporting substantive claim). Why this Court would ignore relevant authority from the Illinois Supreme Court in favor of an opinion from the appellate court that does not discuss the Supreme Court precedent Bumble Bee does not explain, but in any event, an opinion the Seventh Circuit has suggested that *Martis* was "limited to its particular facts and not a true variance from how the Illinois Supreme Court considers unjust enrichment claims as illustrated by *Raintree Homes.*" *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 518 (7th Cir. 2011)

In any event, whether an unjust enrichment claim can stand alone is of no moment here because in the present complaint it does not stand alone. Bumble Bee assumes that McMahon's unjust enrichment claim is being asserted as an independent cause of action. But McMahon's unjust enrichment claim is in fact derivative of his claim that Bumble Bee violated the ICFA; if

his ICFA claim falters so too will his unjust enrichment claim. *See, e.g., Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 855 (7th Cir.2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

*Ciszewski v. Denny's Corp.*, which Bumble Bee offers in support of its contention that unjust enrichment is not a viable claim for McMahon, actually undermines Bumble Bee's argument. True in *Ciszewski* the court dismissed the plaintiff's unjust enrichment claim, as Bumble Bee notes. But the court did so because they "dismissed Ciszewski's claim of fraud under the ICFA" and thus they had to likewise dismiss his claim of unjust enrichment. No. 09-CV-5355, 2010 WL 1418582, at *4 (N.D. Ill. Apr. 7, 2010). Here Bumble Bee does not move to dismiss McMahon's ICFA claim. Thus, because that claim still stands, so too does his claim for unjust enrichment.

\*\*\*

For the foregoing reasons, Bumble Bee's motion to dismiss is denied.

Date: December 12, 2015

John J. Tharp, Jr.
United States District Judge